UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-10, CIELO MONIQUE STEWARD,

    Defendant.
                              /

Case No. 2:17-cr-20053

HONORABLE STEPHEN J. MURPHY, III

## **OPINION AND ORDER DENYING DEFENDANT STEWARD'S MOTION TO SUPPRESS [142]**

On January 23, 2016, Defendant Cielo Monique Steward, along with her girlfriend and co-defendant Morgann Shearron, attempted to board a flight from Phoenix, Arizona to Detroit, Michigan. Each woman checked a bag. Shearron's bag triggered an alert as it went through TSA screening. While conducting a search for explosives, TSA agents discovered what appeared to be illegal drugs. TSA contacted the Phoenix Police Department. Officer Essick arrived and collected Shearron's bag. Meanwhile, Officer Gaspar asked airline representatives whether Shearron checked any other bags. Gaspar learned that Shearron was traveling with Steward, who had checked a bag. Gaspar asked the airline representative to pull Steward's luggage and send it to the police resolution room at the airport.

Officers Beck, Lamb, and Gaspar then met Shearron on the jet way and asked her to accompany them for questioning. Steward elected to join them. The officers checked Steward's information, discovered outstanding warrants for her arrest, and placed her in custody in a holding cell at the airport. Later, Detective DeSantiago searched Steward's

1

bag and found several bricks of suspected cocaine and heroin. The detectives subsequently questioned Steward about her luggage.

The Government charged Steward with conspiracy to distribute controlled substances. Steward now moves to suppress the evidence. For the reasons below, the Court will deny Steward's motion.

## DISCUSSION

Steward challenges the Government's search of her luggage and the statements that followed. She does not challenge her detention or the seizure of her luggage. Steward relies upon two grounds for suppressing the evidence found in her suitcase: (1) the search falls outside the administrative search exception to the warrant requirement, and (2) the search falls outside the search-incident-to-arrest exception to the warrant requirement. The Government responds that the police officers conducted an inventory search pursuant to a written policy. Because the Court finds the police officers conducted an inventory search, it need not consider whether the search falls within the administrative-search or search-incident-to-arrest exceptions of the warrant requirement.

Inventory searches constitute "a well-defined exception to the warrant requirement." *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). The exception rests on the government interests to "protect an owner's property while it is in the custody of police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Consistent with the Fourth Amendment, therefore, police may search the "personal effects of a person under lawful arrest as part of the routine administrative procedure" of "booking and jailing the

suspect."[1] *Lafayette*, 462 U.S. at 643. Moreover, when conducting inventory searches, police officers need not pursue the least intrusive available option. *Id.* at 648.

The Supreme Court further noted that "[r]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment[.]" *Bertine*, 479 U.S. at 374. Additionally, the Supreme Court has recognized that police administrative policies requiring the "opening of all containers or of opening no containers are unquestionably permissible[.]" *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Here, after lawfully detaining Steward, Detective DeSantiago conducted an inventory search pursuant to a written police regulation. Phoenix Police Department regulations require officers, "[u]pon the full custody arrest of a subject, . . . [to] inventory all personal effects in the person's possession prior to booking." ECF 151-3, PgID 855.[2] The inventory must include "look[ing] inside all containers, locked or unlocked." *Id.* That rule is unquestionably permissible. *See Wells*, 495 U.S. at 4. Detective DeSantiago's report includes a recitation of the items found in Steward's luggage: "a bunch of bath towels," "a large object heavily wrapped in saran wrap" that contained "a pillow case" and the bricks of suspected drugs, and "no other personal items or clothing[.]" ECF 151-4, PgID 857. Detective DeSantiago also reviewed Steward's carry-on bag, which contained "her personal items and some clothing[.]" *Id.*

---

[1] Although the Supreme Court in *Lafayette* discussed the inventory-search exception in the context of a police stationhouse, the opinion "did not suggest that the station-house setting of the inventory search was critical" to the Court's holding. *Bertine*, 479 U.S. at 373.
[2] The full text of the Phoenix Police Department's Regulations are available at: https://www.phoenix.gov/policesite/Documents/operations_orders.pdf (last accessed: Apr. 9, 2018).

3

An inventory search, although generally valid, may not be taken in bad faith—i.e. for the "sole purpose of investigation[.]" *United States v. Hockenberry*, 730 F.3d 645, 659 (6th Cir. 2013) (citation omitted). The "mere fact that an officer suspects that contraband may be found" does not "invalidate an otherwise proper inventory search." *Id.* at 659 (citation omitted). Officers conducting an inventory search must act pursuant to a "standardized procedure," but still maintain "flexibility and practical judgment in how such searches are carried out." *Id.* at 661; *see United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) (recognizing that the comprehensiveness of an inventory list may properly be left in the discretion of the officer).

Here, Steward chose to accompany the officers and Shearron to the police room. A check of her identification revealed that there were outstanding warrants for her arrest. The officers then placed Steward in custody. Pursuant to state Phoenix Police Department policy, DeSantiago opened all containers to detail Steward's effects, he searched her bag, and produced a report that named the items discovered. Under the circumstances, the Court cannot conclude that DeSantiago acted in bad faith or for the sole purpose of investigation.

Finally, the Court will deny Steward's request to suppress her statements for several reasons. First, officers lawfully arrested Steward. Second, the officers properly conducted an inventory search of Steward's luggage. Third, the officers provided Steward with proper *Miranda* warnings. Fourth, Steward acknowledged and waived her *Miranda* protections. Fifth, defendant offers no facts or law to support suppression of her statements if the luggage search was proper.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to suppress [142] is **DENIED**.

**SO ORDERED**.

s/ Stephen J. Murphy, III<br>
STEPHEN J. MURPHY, III<br>
United States District Judge

Dated: April 10, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 10, 2018, by electronic and/or ordinary mail.

s/ David Parker<br>
Case Manager