UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,                      Case No. 17-20053

v.

                                      Honorable Stephen J. Murphy, III

D-10 Cielo Steward,

        Defendant.

## Government's Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 366)

Defendant Cielo Steward seeks early release in light of the Covid-19 pandemic, but her motion does not adequately prove that her circumstances are "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A). It is Steward's burden to prove she has a medical condition that is a risk factor for Covid-19 that might otherwise qualify and she failed to meet that burden. And the facility where Steward is has reported very few current cases of Covid-19. Steward should complete her sentence and await her anticipated release date on March 16, 2021. Her motion should be denied.

## Background

Steward and her girlfriend were caught attempting to transport more than 20 kilograms of cocaine and heroin in their luggage to Detroit. (Presentence Investigation Report (PSR) ¶ 13). And Steward wasn't caught the first time she

transported drugs. (*Id.* ¶ 19). Steward and her girlfriend transported kilograms for prolific drug traffickers Darryl and Jerome Terrell. (*Id.* ¶ 18). Officers caught Steward and her girlfriend in January 2016 as they were boarding a plane to Detroit. TSA officials found as much as 21 kilograms of cocaine and heroin in their luggage before departure. (*Id.* ¶¶ 13-14). Steward and her girlfriend flew to Detroit at least 15 other times transporting large loads of kilograms before they were caught. (*Id.* ¶ 19). Steward benefited from the parties' agreement to only hold her responsible for the January 2016 seizure in Phoenix and not for an estimated amount for her other trips to Detroit. And when Steward transported the kilograms she had already accumulated multiple prior convictions for drug offenses. (*Id.* ¶¶ 16, 36-38).

When this Court sentenced Steward she was already serving a five year sentence for her conviction in Arizona from her January 2016 arrest that was a part of the conspiracy she was charged with in this District. (*Id.* ¶ 39). This Court sentenced Steward to 52 months in prison, but reduced her sentence by 34 months because of her Arizona sentence on the related matter, effectively requiring Steward to serve an additional 18 months in prison. (ECF No. 303: Judgment, PgID 1746). On September 13, 2020, Counsel sought appointment to file a motion for compassionate release on Steward's behalf. (ECF No. 358). Steward completed her Arizona sentence on December 8, 2020. Steward is now at the Central Arizona

2

Florence Correctional Complex, a private facility run by CoreCivic that the United States Marshal (USM) contract with, and has not been designated to a BOP facility. Her earliest release date is March 16, 2021. (Gov. Ex. 1: Inmate Data). Steward should complete her sentence.

## Argument

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). The Court cannot sentence Steward to home conferment for the remaining months of her sentence. (ECF No. 366: Steward's Motion, PgID. 2778); *See United States v. Mallory*, No. 17-20053 (E.D. Mich. Jun 19, 2020). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

### A. Steward did not attempt to exhaust her administrative remedies while she was at the BOP.

There are two ways a Court can consider a motion for compassionate release. The first is if the BOP moves for the defendant's release. That is not the case here. The second, after the passage of the First Step Act in 2018, allows a

3

defendant to file a motion with the Court. If a defendant moves for compassionate release under 18 U.S.C. §3582(c)(1)(A), the district court may act on the motion if the defendant files it "after" either completing the administrative process within the BOP or waiting 30 days from when the warden at her facility received her request. A defendant is statutorily required to exhaust her administrative remedies before petitioning the Court. *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020). When counsel sought appointment to pursue compassionate release on Steward's behalf (on September 13, 2020) she was at the BOP transfer center in Oklahoma City (Steward was there from September 8-October 3, 2020). Steward is no longer in BOP custody. *See* https://www.bop.gov/inmateloc/. Steward is now at a private contract facility. (Gov. Ex. 2: BOP Email). Knowing at the time that she intended to seek compassionate release Steward could have made a request to the warden while she was at the BOP facility, but she did not.

While not controlling precedent, the Fifth Circuit has held that in order to exhaust their administrative remedies an inmate should present a request to the chief executive of that facility. *See United States v. Franco*, 973 F.3d 465, 468-69 (5th Cir. 2020). Counsel did this, sending a letter on Steward's behalf to the warden at the facility where Steward is, but not until January 12, 2021, only one day prior to filing her compassionate release motion (counsel also sent letters the same day to two representatives of the USM). (ECF No. 370: Steward Exhibit 2).

4

Counsel since received a response from a USM (that was forwarded from an employee of the facility) that indicates neither the USM nor the private facility involve themselves with such requests. (Gov. Ex. 3: Email Dated 1/22/21). While also not controlling, many other courts have found that a person held in a non-BOP facility cannot present a request to the warden and therefore exhaustion is not required. *United States v. Arreola-Bretado*, 2020 WL 2535049 (S.D. Cal. May 15, 2020); *United States v. Johnson*, 2020 WL 3041923, at *9 (D.D.C. May 16, 2020); *United States v. Ullings*, 2020 WL 2394096, at *2 (N.D. Ga. May 12, 2020); *United States v. Williams*, 2020 WL 3073320, at *3 (D. Md. June 10, 2020) (in local Washington, DC facility); *United States v. Barringer*, 2020 WL 2557035, at *3 (D. Md. May 19, 2020); *United States v. Lopez*, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020) (inmate in home confinement exhausted administrative remedies, when he made request to supervising BOP official, who declined to consider it); *United States v. Hernandez*, 2020 WL 1684062 (S.D.N.Y. Apr. 2, 2020); *United States v. Norris*, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020); *United States v. Gonzalez*, 2020 WL 1536155 (E.D. Wash. Mar. 31, 2020); *United States v. Van Dyke*, 2020 WL 1811346, at *2 (E.D. Wash. Apr. 8, 2020), *adhered to on reconsideration*, 2020 WL 1845553 (E.D. Wash. Apr. 10, 2020).

Nothing prevented Steward, or her attorney, from making the request for release while she was with the BOP. It appears to be a novel issue whether the Court could find that because Steward failed to request compassionate release while she was at the BOP that she failed to exhaust her administrative remedies. But other courts have found that a request was properly presented to the warden where the inmate was held at the time he made the request, even if the inmate was transferred later. See *United States v. Walker*, 2020 WL 7260928, at *3 (C.D. Ill. Dec. 10, 2020) (the defendant exhausted a request at his facility, then was transferred to another; the government agrees that he need not exhaust again); *United States v. Davidson*, 2020 WL 4877255, at *6 (W.D. Pa. Aug. 20, 2020). Ultimately, if the Court decides Steward's motion on the merits it should deny it.

### B. Steward's medical condition does not definitively qualify as "extraordinary and compelling reasons" for compassionate release.

Resolving the merits of a compassionate-release motion involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Elias*, ___ F.3d ___, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C. § 3582(c)(1)(A). In *Elias*, 2021 WL 50169, at *2, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for

6

Case 2:17-cr-20053-SJM-MKM ECF No. 374, PageID.2829 Filed 02/01/21 Page 7 of 15

defendant-initiated motions for compassionate release. Given the Sixth Circuit's holding in *Elias*, controlling circuit precedent now forecloses the argument that § 1B1.13 remains binding. But, a defendant's dangerousness can be considered when weighing the § 3553(a) sentencing factors.

*Everyone* in our society faces a risk from Covid-19 right now. So as the Sixth Circuit has stressed, "generalized fears of contracting Covid-19, without more," do not justify compassionate release. *United States v. Jackson*, 2020 U.S. App. LEXIS 32269, at *6 (6th Cir. Oct. 13, 2020); *accord United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020); *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020).

The CDC notes that obese individuals (those with a BMI that exceeds 30) are at an increased risk of severe illness from Covid-19. If Steward's BMI exceeds 30, her obesity might qualify as "extraordinary and compelling reasons" under § 3582(c)(1)(A), but her current BMI is unknown. Steward has the burden to show her circumstances meet the criteria for compassionate release. *See United States v. Heromin,* 2019 WL 2411311 (M.D. Fla. June 7, 2019) (defendant has burden to demonstrate existence of an extraordinary and compelling reason for compassionate release); *United States v. Malone*, No. 15-373, 2020 WL 3317240 *4 (N.D. Ohio June 18, 2020) (*citing cases*) (a defendant does not meet his burden if he fails to substantiate that medical conditions place him at higher risk of Covid-

7

19). Based on dated information in her PSR (drafted in October 2019) Steward's BMI was 32.3 (5'6" and 200lbs) (PSR ¶ 54). *See* CDC BMI Calculator. But that was more than a year ago. Medical records from the month Steward was at a BOP facility do not indicate her weight. (Gov. Sealed Ex. 4: BOP Medical Records). Steward's Sealed Exhibit 1 appears to indicate she weighed 187lbs on October 31, 2019 (when her height was noted as 5'6"), which would have been a BMI of 30.2, barely obese. She was weighed again on August 8, 2020 and was 195lbs (but her height was noted at 5'5"), which would be a BMI of 32.4. If she is 5'6," her actual BMI at the time would have been 31.5. All are slightly above 30, but Steward's most recent weight is from August 2020, almost six months ago. It is possible she is no longer considered obese. If (at 5'6") she lost just 10lbs since August 2020 when she was last weighed she would no longer be considered obese.

But the CDC also notes that while the correlation between BMI and body fatness is fairly strong, even if two people have the same BMI, the level of body fatness may differ. Generally, African Americans have less body fat than whites with the same BMI. A high BMI can be the result of high body fat or high lean body mass (muscle and bone). At the same BMI, athletes have less body fat than non-athletes. The medical records do not provide a more detailed assessment of Steward's BMI. And it's important to remember that before she was incarcerated Steward was a professional cage fighter for six years and may be more muscular

8

than the average female of her height and weight, so her BMI could be indicative of a higher muscle mass. (PSR ¶ 68). An undated photo from an October 4, 2017, [Detroit News article](#) included a photo of a very muscular Steward, depicted below.



Even if Steward could meet her burden and reliably establish that she is *currently* obese, this Court has denied motions for compassionate release for obese defendants who have raised concerns about their health amid the Covid-19 pandemic, many who, unlike Steward, had other underlying health conditions (referenced below), some of which were also independent increased risk factors for Covid-19. See *United States v. Payton*, No. 12-20043, 2020 WL 4260769 (E.D. Mich. Jul. 24, 2020) (prediabetic, hypertension, gout); *United States v. Atan*, No. 15-20562, 2020 WL 6130906 (E.D. Mich. Jun. 3, 2020) (a BMI of 55 did not qualify as adequate grounds for compassionate release); *United States v. Gordon*,

9

No. 15-20609, 2020 WL 3971013 at *3 (E.D. Mich. Jul. 14, 2020 (because in 2017-2018 the CDC deemed approximately 42.4% of American adults obese and an additional 32% overweight, the condition was not so extraordinary that 'injustice would result if the relief is not granted"); *United States v. Wesley*, No. 15-20718, 2020 WL 4199598 (E.D. Mich. Jul. 22, 2020) (73 yrs old, hypertension); *United States v. Harvey*, No. 18-20444, 2020 WL 4284161 (E.D. Mich. Jul. 27, 2020) (asthmatic); *United States v. Schamante*, No. 13-20764, 2020 WL 4366066 (E.D. Mich. Jul. 30, 2020) (prediabetic, hypertension); *United States v. Lucas*, No. 17-20627, 2020 WL 4437567 (E.D. Mich. Jul. 31, 2020) (diabetic, hypertension, high cholesterol); *United States v. Lucas*, 17-20627, 2020 WL 4437565 (E.D. Mich. Jul. 31, 2020) (diabetic, hypertension, high cholesterol); *United States v. Chandler*, No. 15-20246, 2020 WL 4596843 (E. D. Mich. Aug. 11, 2020) (morbidly obese, hypertension); *United States v. Watkins*, No. 10-20545, 2020 WL 5035111 (E.D. Mich. Aug. 11, 2020) (hypertension); *United States v. Carter*, No. 15-20317 (E.D. Mich. Sept. 22, 2020) (prediabetic, immunocompromised, hypertension) citing *United States v. Ball*, No. 14-20117, 2020 WL 4816197, at *6 (Aug. 19, 2020) (hypertension). And Steward, who is only 34 years old, is not at greater risk of severe effects if she contracts Covid-19 than other defendants who have been denied early release. Steward's case, which lacks sufficient proof that she has any current medical condition that qualifies as

"extraordinary and compelling," is even less compelling.

Steward's prior substance abuse does not qualify as an "extraordinary and compelling" reason for early release[1]. The case Steward cites in support of her argument that a history of substance abuse may qualify as an "extraordinary and compelling" reason under the statute is an outlier. The opinion acknowledged that substance abuse is not listed by the CDC as a definite risk factor for severe infection from Covid-19. *United States v. Perry*, No. 11-20677, 2020 WL 7024915 at *3 (Nov. 30, 2020). While the CDC notes some of the immediate (slow and ineffective breathing, stroke or heart attack) and long term (heart and lung damage) negative effects that drug use has on an individual's system, Steward, having been incarcerated for five years is not a current drug user. And she did not provide any supporting documentation to allow the Court to reasonably conclude that at 34 years old she suffers from any long term health effects from her prior drug use. (PSR ¶¶ 58-63). Because Steward cannot prove she has a current medical condition that meets the first step of the inquiry, the Court need not inquire further and can deny her motion on that basis.

Furthermore, Steward's request for early release in light of Covid-19 is even

---

[1]Counsel's motion also references sleep apnea, but there is no documentation to support that Steward has sleep apnea, nor is it listed as a CDC condition that increases someone's risk of severe effects of Covid-19. (ECF No 366: Steward's Motion, PgID. 2787).

less compelling because the facility where she is only has six active Covid-19 cases. Steward is currently at a private facility that houses 3,334 inmates, so less than 1% of the facility is currently infected. To date, 918 inmates were infected, but have since recovered. And 12 high risk inmates have been vaccinated thus far, showing the facilities' effort to protect its inmate population. (Gov. Ex 5: CoreCivic Email). While infection rate can fluctuate, the facility has seemingly worked to protect its population, including Steward, who did not dispute the sufficiency of conditions at her facility, and did not indicate in her motion that she was experiencing any Covid-19 symptoms. And prior to that, available medical records indicate that while Steward was with the BOP she was tested for Covid-19 and was negative. And as a precautionary measure she was placed in quarantine upon arrival to the BOP. (Gov. Sealed Ex. 4: BOP Medical Records). Fortunately, Steward has not contracted the virus while in a prison setting.

Steward's reasons for release are therefore neither "extraordinary nor compelling."

### C. The § 3553(a) factors do not support early release.

Even when an inmate has shown "extraordinary and compelling reasons," she is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish

that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). So even if the Court were to find that Steward established extraordinary and compelling reasons for her release, the § 3553(a) factors should still disqualify her.

If the Court's analysis reaches this point, the Court could simply say that because Steward may have less than two months left on her sentence she should just be released early in light of the Covid-19 pandemic. But Steward already received the benefit of a reduced sentence. The parties only held her accountable for the drugs she and her girlfriend tried to transport to Detroit the day they were arrested, rather than the estimated amount she brought to Detroit on her 15 prior trips. (PSR ¶ 84). The Court accepted the parties anticipated guideline range of 70-87 months. (ECF No. 240: Plea Agreement, PgID. 1290). The Court varied downward 18 months from the bottom of her guidelines when it sentenced Steward to 52 months. (ECF 303: Judgment). And requiring Steward to complete her previously imposed sentence that already varied downward would not result in a sentencing disparity. Before her convictions related to this offense, Steward had

13

three prior drug related convictions from possessing ecstasy and marijuana to trying to sell morphine, ecstasy, methamphetamine and a handgun. (PSR ¶¶ 36-39). And while Steward has no disciplinary record in prison, a controlled environment, she has consistently reoffended while she is on supervision, a fact for the Court to weigh in determining whether Steward should be granted early release. (*Id.*).

## Conclusion

The Court should deny Steward's motion, but if the Court were inclined to grant Steward's motion despite the government's arguments above, the Court should order that she be subjected to a 14-day quarantine before release.

Respectfully submitted,

Matthew Schneider
United States Attorney

s/ Andrea Hutting
Andrea Hutting
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
313-226-9110 phone
andrea.hutting@usdoj.gov
P68606

Dated: February 1, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing and emailed any sealed exhibits to the following:

Mitchell T. Foster

                                        s/ *Andrea Hutting*
                                        Andrea Hutting
                                        Assistant United States Attorney